UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL          'O'

| Case No. | 8:19-CR-00182-CAS | Date | July 20, 2020 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Dominic Caamano, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| MANVEL CARNEL RICHARDSON | NOT | X | | ALAN EISNER | NOT | | X |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO SUPPRESS FRUITS OF WARRANTLESS SEARCH AND SEIZURE; REQUEST FOR EVIDENTIARY HEARING (ECF NO. 19 filed March 6, 2020)

## I.   INTRODUCTION

Defendant Manvel C. Richardson was indicted on October 30, 2019, for being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). See ECF No. 1 ("Indictment"). The indictment charges that, following a July 21, 2018, traffic stop and search of a vehicle in which Richardson was a passenger, the Costa Mesa Police Department ("CMPD") found Richardson seated on a handgun magazine clip containing live rounds of ammunition, and next to a box of ammunition. Based on the search of the vehicle and Richardson's spontaneous statement at the scene that he was a felon, the government arrested Richardson and brought the present charges.

Richardson filed the present motion to suppress on March 6, 2020. See ECF No. 19 ("Mot."). He contends that the CPMD did not have a constitutional basis to stop the vehicle carrying him in which the ammunition was found. Richardson moves to exclude all evidence from the stop and search. The government filed an opposition on March 13, 2020. See ECF No. 26 ("Opp."). On July 9, 2020, Richardson filed a reply. See ECF No. 49 ("Reply"). The Court held an evidentiary hearing on July 14, 2020. See ECF No. 61.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          'O'

## II.   FACTUAL BACKGROUND

On July 21, 2018, CPMD gang investigation officers Vijay Chawla and Denny Bak were patrolling Harbor Boulevard in Costa Mesa, California. See Declaration of Vijay Chawla ("Chawla Decl.") ¶ 3; Declaration of Denny Bak ("Bak Decl.") ¶ 3.   At approximately 10 p.m. that evening, Officers Chawla and Bak were traveling north on Harbor Boulevard when they saw a gold Chevrolet Cavalier (the "Chevy"). Id.  Officer Chawla claims he saw the Chevy drive onto the wrong side of the street, in violation of California law. Id.  Specifically, Officers Chawla reports that he saw the Chevy's left tires drive onto the wrong side of the street—i.e, that the left tires of the Chevy entered the south bound lane—before returning to the north-bound lane and stopping behind cars waiting to turn at a left turn lane. Id.  Although there is no video footage of this alleged violation, Chawla Decl. ¶ 4, according to Officer Chawla, he believed at that moment, based on his observations, that the Chevy was driving on the wrong side of the road in violation of California Vehicle Code § 21650.  See Chawla Decl. at ¶ 3.

Officer Chawla continued to observe the vehicle from behind and soon turned on its patrol lights.  The Chevy then crossed double yellow lines from the northbound lane to enter the driveway and parking lot of a Jack In The Box restaurant on Harbor Boulevard. See Chawla Decl. ¶ 3; see also Bak Decl. ¶ 3.  Dashboard camera video footage—now activated since the officers had turned on their patrol lights—captures this maneuver.  See Govt's Ex. 2 at 22:01:11. Officer Chawla states that he believed at the time that the Chevy's crossing double yellow lines to enter the restaurant's driveway was an additional violation of the California Vehicle Code, specifically § 21460(a).  See Chawla Decl. ¶ 3.  Officer Chawla also reports that there were no posted signs allowing drivers to make the kind of turn he had just observed the Chevy making into the parking lot, which he understood to mean that the turn was unlawful. Id.  Officer Bak also reports observing the Chevy making the turn, and also claims that he believed the turn violated the state vehicle code.  Even though the officers are not tasked to traffic enforcement, the officers decided to investigate the apparent traffic violation. They followed the Chevy into the parking lot with their patrol lights on, and the Chevy parked in a parking space.  See Govt's Ex. 2 at 22:02:06.

Officers Chawla and Bak approached the Chevy with their flashlights turned on, which they state allowed them to see into the interior of the Chevy.  See Chawla Decl. ¶ 5; Bak Decl. ¶ 6; see also Govt's Ex. 2 at 22:02:09–22:02:19. From the video footage of the incident, lights from the parking lot also appear to illuminate the car to some degree, as well. Id. Officer Chawla approached the Chevy from the driver side where the driver's window was rolled down. See Chawla Decl. ¶ 5.  Officer Bak approached the Chevy from the passenger side.  Bak Decl. ¶ 6. From the open window, Officer Chawla reports seeing three people in the car, the driver, a front-seat passenger, and the back-seat passenger, later identified as Richardson. See Chawla Decl. ¶ 5; see also Bak Decl. ¶ 7.  Before approaching the Chevy, Officer Bak turned on his CMPD-issued

audio recording device located on his uniform. Bak Decl. ¶ 5. Officer Chawla evidently did not.[1] According to the officers, the audio recording device records from the moment Officer Bak activates the device until Officer Bak turns off the recording function. Bak Decl. ¶ 5. Since the passenger-side back window was apparently rolled down when Officer Bak arrived at the back of the Chevy, see Bak Decl. ¶ 7, the audio device captured Officer Bak's conversations with Richardson during the stop, see generally Govt's Ex. 3 (audio recording).

When he arrived to the back window where Richardson was seated, Officer Bak claims he saw a box that appeared to contain live ammunition next to Richardson. Id. During cross-examination, Officer Bak recounted that he saw the box was marked with the word "Blazer." Recognizing the ammunition box, Officer Bak then asked Richardson, "Hey, do you have any guns in the car right now?" Govt's Ex. 3 at 00:57. There was not a clear response. Officer Bak then asked Richardson again whether there were any guns in the car, and stated: "that's not what I asked him; there's a box of ammo right there." Govt's Ex. 3 at 00:57–1:06. Officer Chawla states he heard Officer Bak mention the box of ammunition during this exchange. See Chawla Decl. ¶ 6. Officer Bak again asked Richardson whether there were any guns in the car, to which Richardson can be heard answering "no" because he is "a felon." Govt's Ex. 3 at 1:06–1:28. Officer Chawla claims he also heard Richardson state that he is a felon. See Chawla Decl. ¶ 7. Richardson then appeared to Officer Bak to hesitate answering his questions about weapons. See Bak Decl. ¶ 7. Officer Bak reports that he knew that felons are not allowed to possess any firearms or ammunition. See Bak Decl. ¶ 7. Officer Chawla then looked at the backseat of the Chevy and saw the box of ammunition as well. See Chawla Decl. ¶ 6. Officer Chawla then looked at Richardson through driver-side rear window and saw a silver colored handgun magazine tucked under his left thigh. See Chawla Decl. ¶ 6.

Officer Chawla called for backup because the Chevy contained ammunition and what appeared to be a handgun magazine. See Chawla Decl. ¶ 8. Officer Chawla removed the driver after backup officers arrived. See Chawla Decl. ¶ 9. Another CMPD officer conducted a pat-down search of the driver, but found no weapons. See Chawla Decl. ¶ 9. Officer Bak then removed Richardson, patted him down for a weapon, but did not find a gun or other weapons on

---

[1] At the suppression hearing, the Court permitted Richardson to introduce evidence that Officer Chawla has, on at least one other occasion, failed to activate his audio recording device while conducting an investigation. The Court permitted this evidence (but not other unrelated evidence concerning unverified excessive force allegations that have been asserted against Officer Chawla) over the government's objection (ECF No. 60) on grounds that it was admissible under Federal Rule of Evidence 404(b) to show Officer Chawla's pattern or practice of operation, but not for other purposes.

Richardson. See Chawla Decl. ¶ 9; Bak Decl. ¶ 9. One of the CPMD responding backup officers then informed Officer Chawla that the driver had told him that there was a firearm in the front passenger side of the Chevy. See Chawla Decl. ¶ 9. Officer Chawla then opened the front passenger door and removed the front-seat passenger from the Chevy, conducted a pat-down search for weapons, and found a Kahr CW 40 .40 caliber handgun concealed on the left side of that person's waistband. See Chawla Decl. ¶ 9. After removing the handgun from that person's waistband, Officer Chawla found that the firearm did not have a magazine inserted, but it was loaded with one .40 caliber round of ammunition in the chamber. See Chawla Decl. ¶ 9. The officers later determined that the magazine recovered from the backseat belonged to that handgun.

After removing the individuals from the Chevy, the officers photographed the scene, including the inside of the Chevy. Photographs taken at the scene by Officer Bak show a box of Blazer ammunition and a silver handgun magazine in the backseat of the Chevy. See Exs. 55-58. Although a pair of white sneakers are also shown atop the backseat, the officers testified that those sneakers were only placed there because Richardson had asked for them.

## III.   LEGAL STANDARDS

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness,'" Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006), and "reasonableness generally requires the obtaining of a judicial warrant," Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995). "Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." United States v. Cervantes, 703 F.3d 1135, 1141 (9th Cir. 2012).

A traffic stop by local law enforcement constitutes a warrantless Fourth Amendment "seizure of the occupants of the vehicle." Heien v. North Carolina, 574 U.S. 54, 60 (2014) (internal marks and citation omitted). "[T]he Fourth Amendment requires only reasonable suspicion in the context of investigatory traffic stops." See United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (distinguishing Whren v. United States, 517 U.S. 806, 810 (1996), "which tells us only that probable cause is sufficient to support a traffic stop, not that it is necessary"); accord United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (holding that "traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968)" and that "the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has 'reasonable suspicion' that a particular person 'has committed, is committing, or is about to commit a crime.'") (citation omitted). Reasonable

suspicion must be based on "specific articulable facts which, together with objective reasonable inferences, form the basis for suspecting the particular person detained is engaged in criminal activity." United States v. Job, 871 F.3d 852, 861 (9th Cir. 2017) (internal marks and citation omitted). "[O]nly the facts known to [law enforcement] before they turned on their red signal lights may be considered by the court in determining whether founded suspicion existed." United States v. Doe, 701 F.2d 819, 821 (9th Cir. 1983). In other words, law enforcement "cannot retroactively justify" a traffic stop "on the basis of" information discovered "after-the-fact." Moreno v. Baca, 431 F.3d 633, 641 (9th Cir. 2005).

"Searches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule." United States v. McClendon, 713 F.3d 1211, 1215 (9th Cir. 2013). Accordingly, a defendant challenging the admissibility of evidence on the basis of an unlawful search may bring a motion to suppress the evidence. See United States v. Feil, No. 09-CR-00863-JSW-BZ, 2010 WL 11205823, at *1 (N.D. Cal. Sept. 29, 2010) (citing Wong Sun v. United States, 371 U.S. 471, 488 (1963)).

## IV.   DISCUSSION

Richardson moves to suppress the evidence found in the Chevy on grounds that all of the evidence is fruit of a constitutionally defective traffic stop that violated his Fourth Amendment rights. See United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000) (holding that "a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle," and that "evidence that was seized as a result of that stop would be subject to suppression as 'fruit of the poisonous tree'" if that stop were unconstitutional).

The government bears the burden to establish that the arresting CMPD officers had reasonable suspicion to stop the Chevy. See Cervantes, 703 F.3d at 1141. It claims the officers had reasonable suspicion on two independent grounds: (i) the alleged traffic violation observed by Officer Chawla; and (ii) the alleged traffic violation observed by both Officers Chawla and Bak, and recorded by the officers' dashboard camera. Richardson contends that these justifications are fabricated, and that a reasonable fact-finder should conclude that the officers are not telling the truth.

It is well-established that even a minor traffic infraction—if actually observed by law enforcement—provides a lawful basis to stop a moving car, even if law enforcement only intends to use that minor traffic infraction as a pretext to investigate other criminal activity. See Whren, 517 U.S. at 812-13; e.g., United States v. Chavez, No. 15-CR-00285-LHK, 2018 WL 3126444, at *3 (N.D. Cal. June 26, 2018) (defendant's minor traffic violation provided a legitimate basis

for law enforcement to pull defendant over, even pretextually) (citing <u>Whren</u> and <u>United States v. King</u>, 244 F.3d 736, 738 (9th Cir. 2001)).

Here, Richardson does not dispute that the officers would have been allowed to pull the Chevy over if they actually observed the Chevy commit a traffic violation. Instead, Richardson contends that the officers' account is not credible. The Court disagrees. Even discounting *arguendo* the first traffic violation for driving onto the wrong side of Harbor Boulevard, which Officer Chawla testifies to have observed and which video footage renders plausible given the placement of the Chevy's rear tires on the wrong side of the roadway, both officers also saw—and undisputed video evidence confirms—that the Chevy made a left turn into the Jack in the Box parking lot across two double-yellow lines in violation of California Vehicle Code § 21460(a). This provision prohibits left turns across yellow lines into driveways unless signs are present expressly authorizing those turns. No signs visible at that intersection permit such a turn, and the officers testified that they also were aware of no such sign. At a minimum, and based on those recorded observations alone, the officers could point to "specific, articulable facts" to justify a "reasonable suspicion" sufficient to lawfully stop, and seize, the Chevy. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000) (holding that a traffic stop is lawful in these circumstances).

The search following that stop was also lawful. After observing the box of ammunition, Officer Bak obtained independent and additional reasonable suspicion to prolong the stop. <u>See United States v. Evans</u>, 786 F.3d 779, 788 (9th Cir. 2015) ("[A]n officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion."); <u>United States v. Mendez</u>, 476 F.3d 1077, 1080 (9th Cir. 2007) (holding that a police officer may expand the scope of questioning beyond the initial purpose of a stop if and only if he articulates suspicious factors that are particularized and objective).

Once the stop was prolonged, the officers also had probable cause to remove the passengers from the Chevy and search the Chevy pursuant to the automobile exception to the warrant requirement described in <u>California v. Acevedo</u>, 500 U.S. 565, 569 (1991), as well as the plain view exception set forth in <u>Horton v. California</u>, 496 U.S. 128, 135-36 (1990). Under the automobile exception, law enforcement may search a car without a warrant when they have a reasonable belief that a crime has been committed and the car contains evidence of the crime "which by law is subject to seizure." <u>United States v. Ross</u>, 456 U.S. 798, 805 (1982); <u>see also United States v. Ewing</u>, 638 F.3d 1226, 1233 (9th Cir. 2011) (holding that automobile exception to warrant requirement was satisfied where under the "totality of circumstances" there was "a fair probability that a search of the car would yield evidence of criminal activity"). Where established, law enforcement may search "every part of the vehicle and its contents that may conceal the object of the search." <u>Ross</u>, 456 U.S. at 806. Here, Officers Bak and Chawla each had probable cause to search the Chevy since they observed ammunition and a handgun magazine

in the backseat, and overheard Richardson state that he is a felon. Those facts, taken together, created a reasonable belief that Richardson was a felon in possession of ammunition and potentially a firearm in violation of law, and that the Chevy contained evidence of that crime (i.e., the ammunition and the magazine). The officers were accordingly permitted to search the Chevy for the weapon associated with the ammunition and magazine, and seize the ammunition and magazine as evidence.

Additionally, the plain view exception permits law enforcement officers to conduct a search without a warrant if the officers are "[1] lawfully searching the area where the evidence is found and [2] the incriminating nature of the evidence [is] immediately apparent." Roe v. Sherry, 91 F.3d 1270, 1272 (9th Cir. 1996) (citing Horton, 496 U.S. at 135-36). Here, the officers were lawfully approaching the Chevy when Officer Bak saw a box of ammunition, and Officer Chawla observed the gun magazine, in plain view. The lighting in the parking lot, the fact that the officers testified that they were carrying flashlights, the photographs showing the metallic gun magazine and large box of ammunition clearly marked "Blazer" on the backseat, and the officers' credible testimony that they recalled seeing that magazine and that box and its markings, is all credible evidence that the magazine and ammunition were, in fact, in plain view when the officers approached. In combination with Richardson's statement that he is a felon and the officers' knowledge that felons cannot lawfully possess ammunition or firearms, the incriminating nature of the ammunition and the handgun magazine were "immediately apparent" and independently and additionally justified the search of the Chevy and the seizure of the ammunition and magazine as evidence.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Richardson's motion to suppress evidence recovered from the Chevy.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Deputy Clerk | CMJ |